IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WALTER HAMILTON and DIANNA HAMILTON, Individually and as Legal Guardians of the Person and Estate of KAITLIN HAMILTON, An incapacitated person, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. CIV-18-1240-C |
| BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG and BAYER AG, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have filed a Motion for Partial Summary Judgment on Specific Causation (Dkt. No. 30), a Motion to Exclude the Expert Opinions and Proposed Testimony of Gladys Tse, M.D., Alexander J. Kennedy, M.D., Scott Richard Laker, M.D., Aaron B. Waxman, M.D., PHD, FACP, FCCP, and Jeffery Barlow, DNP, APRN-CNP, FNP-C, CME, CRNFA (Dkt. No. 33), and a Motion for Summary Judgment to Strike Certain of Defendants' Affirmative Defenses (Dkt. No. 34). Each of these Motions hinges on a central question: Does the alleged negligence of certain of Plaintiff Kaitlin Hamilton's ("Kaitie") medical providers limit Defendants' liability to Plaintiffs? The question posed by Defendants is whether the action or inaction of Kaitie's medical providers is a supervening cause which breaks the chain of causation or a mere intervening event?

Kaitie was prescribed YAZ by her dermatologist to control her acne. The parties are in agreement that a combined oral contraceptive ("COC") such as YAZ increases the risk of blood clots. Likewise, it is undisputed that at the time she developed a venous thromboembolic event ("VTE"), Kaitie was taking YAZ. Finally, the parties are in agreement that Kaitie's VTE manifested as a deep vein thrombosis ("DVT"), that the DVT travelled to her lungs and ultimately led to the injuries of which Plaintiffs complain in this action. On occasions prior to suffering the pulmonary embolism, Kaitie presented to various medical providers seeking care for pain in her lower left leg. Defendants argue that these medical providers failed to realize the risk of a DVT and failed to provide prompt assessment and care for that condition. Defendants argue those failures were negligent and therefore Defendants are relieved of liability for Plaintiffs' injuries. For purposes of this Order, the Court will assume that the allegations of medical negligence raised by Defendants can be proven.

Oklahoma law recognizes that the chain of causation can be broken by intervening events. See Johnson v. Hillcrest Health Ctr., Inc., 2003 OK 16, ¶ 21, 70 P.3d 811, 819:

> The general rule is that a causal chain between a negligent act and an injury may be broken by an intervening event—a supervening cause. Not every intervening event severs the causal link between the negligent act and injury. When a cause merely combines with another act to produce injury, or several events coincide to bring about a single injury, each negligent actor may be held accountable.

(footnotes omitted). Before a subsequent event can be found to be a supervening cause, it must meet three elements: "(1) independent of the original act, (2) adequate of itself to

bring about the result and (3) one whose occurrence was not reasonably foreseeable." Thompson v. Presbyterian Hosp., Inc., 1982 OK 87, ¶ 15, 652 P.2d 260, 264. Plaintiffs argue that any negligence by Kaitie's medical providers was reasonably foreseeable and therefore that negligence cannot be a supervening cause. For this point Plaintiffs rely on Atherton v. Devine, 1979 OK 132, 602 P.2d 634. In that case the Oklahoma Supreme Court stated:

> It has long been the rule in Oklahoma that an original wrongdoer, negligently causing injury to another is liable for the negligence of a physician who treats the injured person where the negligent treatment results in the aggravation of injuries, so long as the injured person exercises good faith in the choice of his physician.

Id. at 1979 OK 132, ¶ 5, 602 P.2d at 636. Plaintiffs argue this case establishes that any negligence by Kaitie's treating physicians cannot, as a matter of law, be a supervening cause.

Defendants argue that Plaintiffs' Motions overlook a critical exception to the general rule relied on by Plaintiffs. Defendants direct the Court to Carmichael v. Beller, 1996 OK 48, 914 P.2d 1051. According to Defendants, in Carmichael the Oklahoma Supreme Court noted an exception to

> the general rule is that an original tortfeasor, negligently causing injury to a third person, is liable for the negligence of a physician who treats the injured person where negligent treatment results in aggravation of or increasing the injuries, so long as the injured person exercises good faith in the choice of physicians.

Id. at 1996 OK 48, ¶ 8, 914 P.2d at 1055. The Oklahoma Supreme Court noted that the "original tortfeasor is liable only for the risks normally inherent in submitting to medical,

surgical or hospital treatment, not harm caused by extraordinary misconduct of health care providers or harm outside the risks which are incidental to treatment made necessary by the original tortfeasors' wrongdoing." Id. at ¶ 18, 1058. Defendants argue that the alleged medical negligence of Kaitie's medical providers was extraordinary. Thus, Defendants assert, the general rule does not apply and they should be permitted to present evidence that the medical negligence of Kaitie's medical providers was the cause of her pulmonary embolism and subsequent injuries.

The Court finds no merit in Defendants' arguments. The Oklahoma Supreme Court offered examples of "extraordinary negligence" and the alleged misconduct of Kaitie's medical providers falls well short of those examples. The type of extraordinary acts contemplated by the Oklahoma Supreme Court were "a nurse, unable to bear the sight of the victim's intense suffering, gives an injection of morphine in disobedience of the surgeon's instructions and so excessive she knows it might be lethal" or where a victim takes "advantage of a hospital stay to have an unrelated procedure performed, e.g. victim's initial injury is a broken leg, but examination reveals an unrelated hernia for which surgery is negligently performed." Id. Because there is no evidence from which a reasonable jury could find that the alleged medical negligence of Kaitie's medical providers was "extraordinary," the general rule applies. Thus, no evidence of the alleged medical negligence of Kaitie's medical providers will be presented to the jury.

Plaintiffs argue that Defendant's own experts provide testimony establishing that YAZ was the cause of Kaitie's injury and therefore they are entitled to judgment on the

4

issue of causation. As the Court found in its ruling on Defendant Bayer's Motion for Summary Judgment, questions of fact remain on this issue and it will proceed to trial.

For the reasons set forth herein, Plaintiffs' Motion for Partial Summary Judgment on Specific Causation (Dkt. No. 30) is DENIED. Plaintiffs' Motion to Exclude the Expert Opinions and Proposed Testimony of Gladys Tse, M.D., A. Alexander J. Kennedy, M.D., Scott Richard Laker, M.D., Aaron B. Waxman, M.D., PHD, FACP, FCCP, and Jeffery Barlow, DNP, APRN-CNP, FNP-C, CME, CRNFA (Dkt. No. 33) is GRANTED. Finally, Plaintiffs' Motion for Summary Judgment to Strike Certain of Defendants' Affirmative Defenses (Dkt. No. 34) is GRANTED.

IT IS SO ORDERED this 11th day of June 2019.

ROBIN J. CAUTHRON
United States District Judge