IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WALTER HAMILTON AND DIANNA HAMILTON, Individually and as Legal Guardians of the Person and Estate of KAITLIN HAMILTON, an Incapacitated Person, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. CIV-18-1240-C |
| BAYER HEALTHCARE PHARMACEUTICALS INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG AND BAYER AG | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| MUTUAL OF OMAHA INSURANCE COMPANY, | ) ) ) | |
| Intervenor | ) ) | |
| vs. | ) ) | |
| WALTER HAMILTON AND DIANNA HAMILTON, Individually and as Legal Guardians of the Person and Estate of KAITLIN HAMILTON, an Incapacitated Person, | ) ) ) ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The present action is a dispute over insurance coverage. Plaintiffs are the parents and legal guardians of Kaitlin Hamilton. Kaitlin Hamilton was covered under a group catastrophic injury insurance coverage pursuant to her status as a student athlete at

Oklahoma State University. Kaitlin suffered a left calf strain in December of 2009 while at an athletic meet in Kansas City. She received treatment for that injury off and on until January of 2010. In January she went to see an orthopedic surgeon who was concerned that she had developed a deep vein thrombosis ("DVT"). The orthopedic surgeon scheduled Kaitlin for an ultrasound and on the morning of her scheduled ultrasound Kaitlin was found unresponsive on her dorm room floor, having suffered a pulmonary embolism and subsequent brain injury.

A claim was made on the insurance policy issued by Mutual and in July of 2010, Mutual determined that Kaitlin's claim was covered and began providing benefits. Prior to paying benefits, Mutual submitted medical records to an independent physician for review. That review noted that while Kaitlin's taking YAZ[1] birth control was the most likely genesis of the DVT, it was impossible to eliminate the calf injury as a possible cause. Indeed, notes from Mutual's claims file, authored by the decisionmaker on the claim, outlined the inability to distinguish causation from birth control versus the injury, and on that basis accepted the claim as a covered injury.

In October of 2014, attorneys representing Plaintiffs in an action against the manufacturer of the birth control pill contacted Mutual to obtain copies of the claims file.

---

[1] The term YAZ or birth control when used herein refers to the oral contraceptive Yasmin and/or YAZ, also known generically as drospirenone and ethinyl estradiol designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants Bayer Healthcare Pharmaceuticals, Inc., Bayer Pharma AG, Bayer Corporation, Bayer Healthcare LLC, Bayer Healthcare AG, and Bayer AG.

2

In July of 2016, a medical record management company obtained copies of records from Mutual related to an ongoing lawsuit. In August of 2017, Mutual sent a letter to Plaintiffs indicating that it had terminated benefit payments under the policy based on new evidence that clarified Kaitlin's injuries did not directly result from an accident at a covered event. In this action Mutual argues that certain parts of this evidence were new information. However, documents from the claims file as well as deposition testimony in this case demonstrate that Mutual was aware that Plaintiffs were pursing an action against Bayer several years prior to the 2017 termination letter. After approximately 45 days, and following protest from lawyers representing the Hamiltons as well as other community leaders, Mutual reinstated benefits to Kaitlin. However, the parties are in dispute as to whether or not all outstanding claims under the policy have been paid.

Mutual sought leave to intervene in the action between the Hamiltons and Bayer and once Mutual had done so, the Hamiltons filed a counterclaim against Mutual, asserting claims for breach of contract and bad faith. Mutual has filed a Motion for Summary Judgment seeking judgment on Plaintiffs' claim for breach of contract and subrogation, as well as the claim for bad faith.

Plaintiffs seek partial summary judgment, arguing they are entitled to the value of the insurance policy, as the August 2017 termination by Mutual constituted a repudiation of the contract. Plaintiffs also request judgment on Mutual's request for subrogation, arguing that there is no right of subrogation or alternatively that the subrogation clause in

the insurance policy does not cover any recovery that Kaitlin obtained from the litigation related to Bayer.[2]

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). [A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact. Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). The burden is not an onerous one for the nonmoving party

---

[2] Plaintiffs settled their claims against the Bayer Defendants in August of 2019.

in each case, but does not at any point shift from the nonmovant to the district court. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **ANALYSIS**

Beginning with Mutual's Motion, the Court will address each party's Motion for Summary Judgment in this Order.

A. Breach of Contract

Mutual argues that Plaintiffs cannot demonstrate a breach of contract claim because they cannot show that Kaitlin was entitled to benefits under the policy. In support of its first argument, Mutual directs the Court to the opinions of the medical providers in this action. According to Mutual, the medical experts for both parties indicate that YAZ was the most likely cause of the DVT and subsequent injury. Mutual directs the Court to the language of the insurance policy defining what is a covered accident. The policy states Covered Accident "means an accident that occurs while this Policy is in effect, between August 1, 2009, and August 1, 2013, which directly results in bodily injury or death (not excluded from coverage by the Policy Exclusions and Limitations) of an Insured Person . . . ." (Dkt. No. 254-2, p. 14.) As noted above, Mutual argues that Kaitlin's injury does not fall under the definition of a covered accident because it was not directly caused by the left calf strain. On this point Mutual's argument must fail. Even Mutual's medical experts state unequivocally that it is possible that the left calf strain was a cause of

5

the DVT. Indeed, the medical reports are clear that it is impossible to distinguish whether the strain alone, YAZ alone, or a combination of YAZ and the muscle strain led to the DVT.

Indiana recognizes that where a pre-existing medical condition sets in motion a chain of events which results in the ultimate injury, the original event is the direct cause of the ultimate injury. Am. States Ins. Co. v. Morrow, 409 N.E.2d 1140, 1141-42 (Ind. Ct. App. 1980).[3] Indeed, to the extent Mutual argues that other jurisdictions have a more restrictive definition of direct cause, the Indiana courts have expressly rejected that position. See Nationwide Mut. Ins. Co. v. Neville, 434 N.E.2d 585, 590 (Ind. Ct. App. 1982). Under Indiana law, "[i]t is the duty of courts to interpret a contract so as to ascertain the intent of the parties." First Fed. Sav. Bank of Ind. v. Key Mkts., Inc., 559 N.E.2d 600, 603 (Ind. 1990). Consistent with that instruction, the Court has evaluated the language of the contract and applied the appropriate Indiana law to determine that the left calf strain falls within the scope of a direct cause, rendering it a Covered Accident under the terms of the policy. Thus, Kaitlin is entitled to benefits.

Alternatively, Mutual argues that Kaitlin suffered no damage as a result of the termination of claim payments between August 17 and October 2, 2017. Mutual argues that because it subsequently paid any claims that were denied following the termination of benefits, Plaintiffs cannot demonstrate that Kaitlin has suffered any damage and, as a result,

---

[3] The parties are in agreement that Indiana law controls interpretation of the insurance policy, while Oklahoma law will govern the bad faith claims.

the breach of contract claim must fail. Mutual argues that because Plaintiffs are not parties to the contract, any damage or loss they suffered is not compensable damage for any alleged breach of the policy.

Certainly, at the time Mutual suspended payments under the policy, Kaitlin suffered a loss; that is, there were medical providers that were not paid. Kaitlin would not have received some of the care that was necessary absent payments by third parties. Thus, she clearly suffered a loss due to Mutual's termination of benefits. Orto v. Jackson, 413 N.E.2d 273, 278 (Ind. Ct. App. 1980) ("A party injured by a breach of contract is entitled to receive damages that may reasonably be considered to have arisen naturally from the breach or as may reasonably have been in contemplation of the parties at the time they entered the contract as a probable result of its breach.") That Mutual ultimately mitigated its damages by paying the claims does not absolve it of the breach. Rather, Mutual's actions only impact the amount of damages that may be recovered for the breach. "A fundamental rule of damages applicable to breach of contract cases is that the party injured by the breach is limited in recovery to the loss actually suffered; he is not entitled to be placed in a better position than he would have been if the contract had not been broken." Jay Clutter Custom Digging v. English, 393 N.E.2d 230, 234-35 (Ind. Ct. App. 1979). The amount of damages, if any, that Plaintiffs are entitled to recover for breach of contract is a matter for determination by the jury.

B. Bad Faith

Mutual argues it is entitled to judgment on Plaintiffs' bad faith claim. According to Mutual, the undisputed facts demonstrate it acted reasonably and in good faith in handling Kaitlin's claim. Mutual states that at a minimum there was a legitimate dispute as to coverage and therefore there can be no bad faith. See Bailey v. Farmers Ins. Co., 2006 OK CIV APP 85, ¶ 16, 137 P.3d 1260, 1264. In response, Plaintiffs offer sufficient evidence to demonstrate a question of fact exists on this issue. The facts presented by Plaintiffs, if accepted by the jury, would establish that Mutual acted in bad faith in terminating the policy. In its Reply, Mutual argues that many of the acts now relied on by Plaintiffs as bad faith were not set forth in their counterclaim. However, the Counterclaim provided adequate notice to Mutual that Plaintiffs were pursuing claims for bad faith. That discovery has now allowed Plaintiffs to more explicitly detail that claim does not prejudice Mutual.

C. Punitive Damages

Finally, Mutual argues that Plaintiffs' claims for punitive damages must fail because their claim for bad faith fails. Alternatively, Mutual argues that the evidence does not demonstrate the level of conduct necessary to support an award of punitive damages.

The Court has previously determined that the issue of bad faith will be submitted to the jury. Thus, Mutual's first argument fails. Whether or not the evidence demonstrates conduct by Mutual that warrants submission of the issue to the jury cannot be determined

until the evidence is presented at trial. Certainly, at this stage, Plaintiffs have offered enough evidence to deny Mutual's request for summary judgment on the issue.

D. Repudiation

Before turning to Plaintiffs' arguments related to repudiation, the Court must first address whether or not the issue is before it. First, Mutual argues that the counterclaim is not even properly before the Court, as Plaintiffs filed an answer to an amended intervenor complaint that did not include a counterclaim. As Plaintiffs note, the counterclaim and answer were separate documents pursuant to Court Order. Thus, when the second amended complaint was filed, only an answer was required to be filed in response. The counterclaim remained pending as no amendment or other challenge had been brought which required it to be refiled.

Turning to whether or not the repudiation claim was ever raised, Plaintiffs argue that their counterclaim asserts breach of contract and that under Indiana law, which the parties agree govern the interpretation of the insurance policy at issue here, repudiation is merely a type of breach of contract. Additionally, in the joint status report filed before this Court, Plaintiffs specifically claim the full amount of the contract in damages. Thus, while it perhaps would have been more prudent for Plaintiffs to have raised or at least made clear that their claim was based on repudiation of the contract, it does appear that Mutual was fairly on notice that the claim for the full amount of the insurance contract would be made by Plaintiffs. Indeed, nowhere in their response to the motion for summary

judgment does Mutual argue any prejudice from Plaintiffs' failure to use the word "repudiate" until filing the present motion for summary judgment.

The Indiana Court of Appeals stated, "where liability has attached under a contract of insurance, but where liability has been denied by the insurer, the insured may treat the contract as repudiated and may pursue his remedy to recover all that is due him in a single suit on a lump-sum basis." Colonial Life & Accident Ins. Co. v. Newman, 284 N.E.2d 137, 139 (Ind. Ct. App. 1972).

In order to establish repudiation, Plaintiffs must show the existence of a contract and a positive, absolute, and unconditional repudiation of that contract. See Eden United, Inc. v. Short, 573 N.E.2d 920, 929 (Ind. Ct. App. 1991). Plaintiffs argue that there is no question that liability attached or that the existence of a contract existed when Mutual made its 2010 determination that Kaitlin's injury was covered under the policy. Mutual argues that Plaintiffs cannot demonstrate an entitlement to coverage because the evidence supports its position that the DVT was caused by the birth control that Kaitlin was taking. However, as the Court made clear elsewhere in this Order, because it cannot be clearly established whether the DVT was caused by birth control pills, the athletic injury, or some combination, Kaitlin's current injuries are a covered event under the policy and therefore she is entitled to continue to receive benefits under that policy.

Mutual's primary defense to Plaintiffs' claim of repudiation is Plaintiffs' continued request for payment under the policy even following the termination. Mutual points to letters from Plaintiffs' counsel demanding that the benefits be reinstated after termination.

Relying on Ind. Life Endowment Co. v. Carnithan, 109 N.E. 851 (Ind. App. 1915), Mutual argues that where the insured treats the policy as in force and continues to recover benefits he cannot claim repudiation by the insurance company. In response, Plaintiffs direct the Court to Fischer v. Heymann, 12 N.E.3d 867 (Ind. 2014), for legal support that their right to continue to make claims under the contract amounts to mitigation and since they were required to mitigate their damages it does not trump any claim for repudiation.

The Court finds the fatal flaw in Plaintiffs' request for repudiation is their action of continued receipt of policy benefits once Mutual began repaying. The Carnithan case cited by Mutual is instructive on this point:

> appellee was trying to hold on to two inconsistent remedies, vis., he was trying to keep the contract alive in order that he might enforce one of its provisions and at the same time treat it as canceled for all purposes except for the purpose of predicating damages for a repudiation thereof. Appellee by thus electing to keep such contract alive for his own benefit kept it alive for all purposes both for himself and for appellant, and estopped himself from afterwards predicating a suit thereon for the alleged repudiation.

Carnithan, 109 N.E. 851, 856. Plaintiffs' action in demanding reinstatement of benefits and/or seeking other means of financing Kaitlin's medical needs could be seen as mitigation. However, once Mutual reversed its position on termination and Plaintiffs accepted that change by continuing to submit claims for payment, any argument of repudiation was lost, and the contract was once again accepted by each party. Thus, Plaintiffs' request for judgment on the claim of repudiation will be denied.

E. Estoppel

Plaintiffs seek a determination that Mutual is estopped from denying continued liability under the policy because it failed to make a reservation of rights when it first began paying claims on Kaitlin's behalf. In light of the Court's ruling that coverage exists under the policy, this issue is moot.

F. Subrogation

Plaintiffs argue that Mutual has no subrogation rights under the policy. According to Plaintiffs, the policy provisions which govern any subrogation claim establish that any funds recovered from Bayer are not subject to subrogation. Unsurprisingly, Mutual disagrees, arguing it is entitled both to recover all monies paid on Kaitlin's behalf from any proceeds of the settlement with Bayer, and also treat any future claims under the policy as "Other Insurance."

> The relevant policy provisions are as follows:
>
> If the Insured Person has rights to recover from a third party all or part of any payment made under the terms of this Policy, those rights, are transferred to the Company, regardless of whether the Insured Person has been made whole or has received full compensation from or has been paid by the third party all losses sustained or alleged. The Insured Person must do nothing after the Covered Accident to impair such rights. At the Company's request, and at the Company's expense, the Insured Person will bring legal action or transfer those rights to the Company and help the Company enforce them.
>
> In addition, the Company shall be entitled to recover any benefits paid up to the amount of the "Net Recovery" by the Insured Person against any such third party. "Net Recovery" shall mean the gross recovery against the third party wrongdoer, less attorneys' fees and expenses and court costs.

> Should any money be recovered by the Insured Person from an alleged third party wrongdoer for the same Covered Accident for which benefits were paid under this Policy, the "Net Recovery" shall be considered Other Insurance for all purposes of this Policy.

Dkt. No. 188, Exh. 9, KHvMOO 015302. The interpretation of this language is a question of law for the Court. Am. Family Life Assurance Co. v. Russell, 700 N.E. 2d 1174, 1177 (Ind. Ct. App. 1998). The language is given its plain and ordinary meaning. Liberty Mut. Ins. Co. v. Mich. Mut. Ins. Co., 891 N.E.2d 99, 101 (Ind. Ct. App. 2008). If there are ambiguities in the language, those ambiguities are construed against the insurer and resolved in favor of the insured. Tate v. Secura Ins., 587 N.E. 2d 665, 668 (Ind. 1992). "The construction of the contract of insurance cannot be limited to a strict construction of the eleventh section or any other one section, but must be construed as a whole." Bowen v. Farmers Mut. Ins. Co. of Mulberry, 199 N.E. 426, 428 (Ind. App. 1936).

Plaintiffs argue the three paragraphs of the subrogation clause should be read as two independent clauses with the first two paragraphs as one and the final paragraph the other. The Court is not persuaded that is a proper construction of the policy language. Rather, applying the rule requiring construction as a whole, the Court finds all three paragraphs must be considered together. Nonetheless, the Court agrees with Plaintiffs that Mutual is not entitled to subrogation for payments made on behalf of Kaitlin.

First, the Court notes that language in the first paragraph required certain action by Mutual. Mutual was required to either bring an action against Bayer on Kaitlin's behalf, or pay the expenses of any action brought on her behalf. Mutual did neither. Mutual

may argue that it could not have done so as it was unaware of a potential claim against Bayer until after Plaintiffs had filed their action. First, this argument is contrary to the evidence in the claims file. As noted above, Mutual was aware that Kaitlin's birth control pills were a potential factor in her injury from the initial medical review conducted at Mutual's request. As early as 2010, Mutual's doctor opined that the use of oral contraceptives played a role in the DVT. Even if Mutual was not aware until litigation was filed against Bayer, there is no evidence Mutual ever offered to assist Plaintiffs with litigation expenses. Thus, Mutual failed to perform its part under the first paragraph. To allow Mutual to have sat on the sidelines until a favorable recovery was made and only then seek subrogation would not give effect to all the contract language. It may be said that the language is unclear whether Mutual had a duty to act. Even if that is the case, when that ambiguity is construed against Mutual, a requirement of action must be imposed.

The second paragraph begins with the phrase "in addition." That phrase clearly links it to the first paragraph and therefore it is subject to the same requirement that Mutual have taken some action to pursue the claim or pay the expenses. Plaintiffs argue the third paragraph stands alone. However, whether treated as an independent option or an addition to the first two paragraphs, the third does not change the outcome for two reasons. The first is apparent – as explained above, Mutual did not take the required steps to preserve its interests. The second is that advocated by Plaintiffs. The third paragraph provides for subrogation when recovery from the third party is for the same "Covered Accident." "Covered Accident" is a term defined in the policy. Any recovery from Bayer did not

result from "the same Covered Accident for which benefits were paid under this Policy." Dkt. No. 188, Exh. 9, KHvMOO 015302. Bayer settled with Plaintiffs because its product – YAZ – was a cause of Kaitlin's injuries. Mutual must pay claims because the calf strain was a "covered accident" as defined by the policy. In its response, Mutual repeatedly argues it is entitled to subrogation because the recovery from Bayer and the payments it made are the result of the same "injury." While that may be correct, it is not what the policy says. As noted above, the Court's obligation in this matter is to give effect to the policy as it is written, not as a party wished it had been written. Because the payments to Plaintiffs from Bayer and Mutual are not for the "same Covered Accident," there can be no right of subrogation under the policy. Plaintiffs' Motion will be granted on this issue. Mutual's Motion will be denied.

G. Reservation of Rights

In light of the Court's resolution of the subrogation clause, Plaintiffs' arguments that certain subrogation claims have been waived due to a failure to reserve rights is moot.

H. Other Insurance

Finally, Plaintiffs argue the Other Insurance clause of the policy does not apply to any recovery from Bayer. Plaintiffs note that in Jensen v. Board of Regents Univ. of Nebraska, 684 N.W.2d 537 (Neb. 2004), the Nebraska Supreme Court construed a similar NCAA policy. In examining the other insurance clause, the Jensen court relied on the ejusdem generis principle of contract construction. Id. at 543. Under that rule "specific

words or terms modify and restrict the interpretation of general words or terms where both are used in sequence." Id. (citation omitted). The Jensen court then stated:

> Applied in this context, our interpretation of the broad, general definition "any other source whatsoever" is modified by the specific words and terms surrounding it, notably, the specific term "Other Insurance" and the seven specific examples of "Other Insurance," all of which bear the traditional characteristics of insurance. Thus, NASIC's general description of "Other Insurance" as including recovery from any source whatsoever is restricted to include only recovery from any form of *insurance*. Jensen's settlement with the university bears none of the traditional characteristics of insurance.

Id. Mutual argues this case is inapplicable as the language of the policy is different. In Reply, Plaintiffs attach a copy of the policy at issue in Jensen. That policy is strikingly similar to the one at issue here. Regardless of any similarities or differences, Mutual's argument directs the Court to the subrogation clause, not the Other Insurance clause. As the Court has rejected the subrogation claim, this argument is unhelpful to Mutual. The Jensen court noted that in defining sources of "other insurance" the policy listed seven specific sources, all of which are traditional forms of insurance. Id. The policy at issue here provides seven examples of "other insurance" and indeed each are a traditional form of insurance. Indiana applies the rule of ejusdem generis when appropriate. O'Bryant v. Adams, 123 N.E.3d 689, 693 (Ind. 2019).

The Court is not persuaded that application of ejusdem generis is necessary. The language of the "Other Insurance" clause is fairly clear, and it is inapplicable to Plaintiffs' recovery from Bayer. Were the Court to find the terms ambiguous it would apply the

16

doctrine and again find that the "Other Insurance" clause does not apply. Accordingly, Plaintiffs are entitled to judgment on this issue.

## **CONCLUSION**

For the reasons set forth herein, the Amended Motion for Summary Judgment of Intervenor Mutual of Omaha Insurance Company (Dkt. No. 254) is DENIED. The Motion for Partial Summary Judgment of Plaintiffs Walter Hamilton and Dianna Hamilton, Individually and as Legal Guardians of the Person and Estate of Kaitlin Hamilton, an Incapacitated Person (Dkt. No. 188) is GRANTED in part and DENIED in part. Plaintiffs' request for repudiation is DENIED. Plaintiffs' arguments on the issues of estoppel and reservation of rights are MOOT. Plaintiffs' request for judgment on subrogation and "Other Insurance" is GRANTED.

IT IS SO ORDERED this 5th day of September 2019.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge